**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AHMAD MANN,<br><br>    Petitioner,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Civil Action No. 18-14629 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Petitioner Ahmad Mann ("Petitioner"), a prisoner currently confined at the Federal Correctional Institution in Fort Dix, New Jersey, is proceeding *pro se* with a motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255. (D.E. No. 1 ("Motion")). Respondent United States of America ("Respondent") opposes the Motion. (D.E. No. 5). For the reasons explained in this Opinion, the Court denies the Motion and declines to issue a certificate of appealability.

**I. FACTUAL BACKGROUND & PROCEDURAL HISTORY**

The Court recounts only the facts relevant to this Opinion. On August 17, 2016, a federal grand jury indicted Petitioner on one count of conspiracy to distribute 100 grams or more of heroin, contrary to 21 U.S.C. §§ 841(a) and (b)(1)(B), in violation of 21 U.S.C. § 846, three separate counts of distribution of, and possession with intent to distribute, heroin, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(C), and 18 U.S.C. § 2, and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *United States v. Mann*, No. 16-0380, D.E. No. 84. On October 28, 2016, Petitioner agreed to plead guilty to the conspiracy count. *Id.*, D.E. No. 97.

As part of the plea agreement, Petitioner and Respondent stipulated to the following facts, among others:

> On or about November 9, 2011, [Petitioner] was convicted in New York Supreme Court of criminal possession with intent to sell of a controlled substance, in violation of New York Penal Law 220.16(1). On or about February 2, 2004, [Petitioner] was convicted in the United States District Court for the District of New Jersey of distribution of 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).
>
> If [Petitioner] is determined to be a Career Offender, pursuant to U.S.S.G. § 4B1.1, due to having sustained at least two prior felony convictions for crimes of violence or controlled substance offenses, then the base Offense Level for the instant offense will be 34, and [Petitioner's] criminal history will be category VI. [Petitioner] reserves the right to argue at sentencing that he is not a Career Offender, and the Government reserves the right to argue that he is a Career Offender. The Government will not argue for or seek a sentence of imprisonment above 188 months.

*Id.*, Schedule A ¶¶ 1(b) & (c). The Court accepted the plea agreement on January 31, 2017. (D.E. No. 96). On September 25, 2017, this Court sentenced Petitioner to 170 months imprisonment, to be followed by four years of supervised release. *Id.*, D.E. Nos. 108 & 110. This sentence was below the statutory maximum penalty of forty years of imprisonment. *See* 21 U.S.C. §§ 841(b)(1)(B)(viii) & 846. Petitioner did not file a direct appeal.

On October 2, 2018, Petitioner filed the Motion. Petitioner submits that his New York state conviction does not qualify as a controlled substance offense under United States Sentencing Guidelines ("U.S.S.G."). Specifically, Petitioner claims that the elements of the crime he committed in New York law are broader than the federal definition of a controlled substance offense. (Motion at 5; D.E. No. 1-1 ¶ 13). As such, Petitioner argues that he should not have been designated as a career offender. (*Id.*). Petitioner also argues that his counsel provided ineffective assistance for not arguing that Petitioner's New York state conviction did not qualify as a controlled substance offense. (Motion at 6; D.E. No. 1-1 ¶ 25).

2

Respondent opposes Petitioner's Motion. (D.E. No. 5). Although he was given an opportunity to reply, and extension of his time to do so, Petitioner did not reply. (D.E. No. 7).

## II.     LEGAL STANDARDS

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. But the grounds for such a motion are narrow. *United States v. Braddy*, 837 F. App'x 112, 115 (3d Cir. 2020). Section 2255(a) provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A petitioner is only entitled to habeas corpus relief under limited circumstances." *Morelli v. United States*, 285 F. Supp. 2d 454, 458 (D.N.J. 2003). "The petitioner must establish that the sentence suffers from 'a fundamental defect' causing 'a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *Id.* at 458–59 (quoting *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989)); *see also United States v. Horsely*, 599 F.2d 1265, 1268 (3d Cir. 1979).

Issues resolved in a prior direct appeal, and issues which should have been raised on direct appeal, may not be raised in a § 2255 motion. *United States v. Travillion*, 759 F.3d 281, 288 & n. 11 (3d Cir. 2014). Such issues, however, may be used to support an ineffective assistance of counsel claim in a § 2255 motion. *Id.*; *Braddy*, 837 F. App'x at 115; *Massaro v. United States*, 538 U.S. 500, 504 (2003). Thus, as a practical matter, movants can use ineffective assistance claims as a vehicle for substantive claims that might otherwise be defaulted. *See Travillion*, 759 F.3d at 288. Otherwise, procedurally defaulted claims that are not raised through the guise of an

3

ineffective assistance of counsel claim may be raised "only if [petitioner] can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks and citation omitted).

### III. ANALYSIS

Petitioner raises two grounds for relief in his Motion: (i) the Court improperly sentenced him as a career offender, and (ii) his counsel was ineffective for failing to argue against his career offender designation. (*See* generally Motion; *see also* D.E. No. 1-1).

#### A. Career Offender Designation

Petitioner relies on *United States v. Mathis*, 136 S. Ct. 2243 (2016), to argue that he should not have been designated as a career offender. Specifically, Petitioner says that his New York conviction does not qualify as a controlled substance offense under the career offender guidelines because the New York law he was convicted under is broader than the federal definition of a controlled substance offense. (Motion at 5; D.E. No. 1-1 ¶ 13).

Regardless of whether Petitioner is correct regarding the breadth of the New York law, his claim fails. The Third Circuit recently held that a non-constitutional claim based on an incorrect career-offender designation is not cognizable if the resulting sentence fell within the statutory maximum for the offense. *United States v. Folk*, 954 F.3d 597 (3d Cir. 2020). In so holding, the Third Circuit explained that such a claim is not cognizable because "it is not a fundamental defect that inherently results in a complete miscarriage of justice." *Id.* at 604. The Circuit supported its conclusion with four rationales: "(1) the lawfulness of a sentence within the statutory limit; (2) the advisory nature of the Guidelines; (3) an interest in finality; and (4) a concern about workable standards." *Id.* As explained above, Petitioner was not sentenced outside of the forty-year

4

statutory maximum applicable to conspiracy to distribute 100 grams or more of heroin. *See* 21 U.S.C. §§ 841(b)(1)(B)(viii) & 846. Accordingly, based on *Folk*, Petitioner's first claim is denied.

But even assuming *arguendo* that Petitioner raises a cognizable claim, the claim still fails on the merits. In support of his argument that his New York conviction did not qualify him for a career offender enhancement, Petitioner argues that New York Penal Law ("NYPL") § 220.16 does not qualify as a controlled substance offense because § 220.16 is an "indivisible statute," as explained in more detail below, and its elements are broader than the federal definition of a controlled substance offense. (D.E. No. 1-1 ¶ 11). These arguments are unpersuasive.

When deciding whether a conviction constitutes a controlled substance offense under the career offender guidelines, courts "may look only to the elements of a defendant's prior conviction, not 'to the particular facts underlying those convictions.'" *United States v. Abbott*, 748 F.3d 154, 157 (3d Cir. 2014) (quoting *Descamps v. United States*, 570 U.S. 254, 261 (2013)); *United States v. Williams*, 898 F.3d 323, 333 (3d Cir. 2018). This inquiry is called the "categorical approach." *Williams*, 898 F.3d at 333. There is also a "modified categorical approach" which allows a court to look beyond the elements of the prior conviction. *Id.* The modified categorical approach is permissible when a prior conviction is for violating a "divisible statute." *Id.*; *Descamps*, 570 U.S. at 257.

> That kind of statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.

5

*Descamps*, 570 U.S. at 257. But if a statute is "indivisible"—i.e., does not contain alternative elements, then only the categorical approach is permissible.

Determining whether to apply the categorical approach is relatively simple when a statute sets out a single set of elements, defining a single crime. *Mathis*, 136 S. Ct. at 2248. But more complicated statutes may make this determination more difficult. *Id.* at 2249. In such cases, the Court must determine whether the statute at issue defines different crimes using different elements or whether it merely list various factual means of committing a single element. *Id.* "'Elements' are the 'constituent parts' of a crime's legal definition—'the things the prosecution must prove to sustain a conviction.'" *Id.* at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)).

Here, contrary to Petitioner's argument, the Court finds that § 220.16 is a divisible statute, and the modified categorical approach applies. Section 220.16 provides that "[a] person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses"

> 1. a narcotic drug with intent to sell it; or
>
> 2. a stimulant, hallucinogen, hallucinogenic substance, or lysergic acid diethylamide, with intent to sell it and has previously been convicted of an offense defined in article two hundred twenty or the attempt or conspiracy to commit any such offense; or
>
> 3. a stimulant with intent to sell it and said stimulant weighs one gram or more; or
>
> 4. lysergic acid diethylamide with intent to sell it and said lysergic acid diethylamide weighs one milligram or more; or
>
> 5. a hallucinogen with intent to sell it and said hallucinogen weighs twenty-five milligrams or more; or
>
> 6. a hallucinogenic substance with intent to sell it and said hallucinogenic substance weighs one gram or more; or
>
> 7. one or more preparations, compounds, mixtures or substances containing methamphetamine, its salts, isomers or salts of isomers with intent to sell it and said preparations, compounds, mixtures or

6

> substances are of an aggregate weight of one-eighth ounce or more; or
>
> 8. a stimulant and said stimulant weighs five grams or more; or
>
> 9. lysergic acid diethylamide and said lysergic acid diethylamide weighs five milligrams or more; or
>
> 10. a hallucinogen and said hallucinogen weighs one hundred twenty-five milligrams or more; or
>
> 11. a hallucinogenic substance and said hallucinogenic substance weighs five grams or more; or
>
> 12. one or more reparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more; or
>
> 13. phencyclidine and said phencyclidine weighs one thousand two hundred fifty milligrams or more.
>
> Criminal possession of a controlled substance in the third degree is a class B felony.

The language of the statute makes clear the statute is divisible. The statute does not list 13 different factual means of committing a single element; rather, the subsections contain different elements— some sections require intent to sell, while others consider the weight of the prohibited substance, and another requires that the defendant have previously engaged in certain conduct. The Court thus agrees with another judge within this Circuit who has held, "[t]he structure and varying subsection requirements of § 220.16 support the conclusion that the statute is divisible and the modified categorical approach may be applied to determine if a violation of the statute serves as a predicate offense for USSG career offender designation." *Stevenson v. United States*, No. 18-0057, 2019 WL 845418, at *6 (M.D. Pa Feb. 21, 2019).[1]

---

[1] Although there does not appear to be a New York state court decision on point, New York's model jury instructions seem to suggest that New York considers § 220.16 divisible. *See Mathis*, 136 S. Ct. at 2256 (directing courts to look to state law to determine the nature of an alternatively phrased list); *Perez-Cobon v. Att'y Gen. United States*, 816 F. App'x 718, 721 (3d Cir. 2020) (considering Delaware's pattern jury instructions to determine whether a statute is divisible). Those jury instructions group certain subsections together, resulting in seven different jury instructions containing some overlapping and some different elements. *See* Criminal Jury Instructions & Model Colloquies, Penal Law Article 220, *available at* http://www.nycourts.gov/judges/cji/2-PenalLaw/220/art220hp.shtml (last visited Nov. 18, 2021).

7

Petitioner's reliance on *Harbin v. Sessions*, 860 F.3d 58 (2d Cir. 2017), is unpersuasive. Relying on *Harbin*, Petitioner claims that the Second Circuit has ruled that § 220.16 is an indivisible statute. (D.E. No. 1-1 ¶ 11). In *Harbin*, the Second Circuit considered whether the petitioner's conviction under NYPL § 220.31 (*not* § 220.16) constituted a drug trafficking aggravated felony barring him from receiving cancellation of removal. *Harbin*, 860 F.3d at 61. The Government argued that § 220.31 was divisible because it required that the defendant must knowingly and unlawfully sell a controlled substance, and the statute incorporated state schedules to define "controlled substance." *Id.* at 66. But the court disagreed. To support its conclusion, the court considered, *inter alia*, how New York state court decisions have considered § 220.16(1)—which it said was comparable to § 220.31. *Id.* at 67. As to § 220.16(1), the *Harbin* court explained, New York courts have held that different narcotic drugs do not create separate crimes under this statute. *Id.* But the *Harbin* court did not compare the entirety of § 220.16 to § 220.31, and specifically focused its comparison on subsection one. In other words, the *Harbin* court did not conclude or even suggest that § 220.16 (as a whole) is an indivisible statute. Perhaps, the *Harbin* court suggested the opposite by considering § 220.16(1) in isolation.

Based on the foregoing, the Court concludes that § 220.16 is a divisible statute, and the Court must employ the modified categorical approach to determine which alternative formed the basis of Petitioner's prior conviction. Here, there is no dispute that Petitioner was convicted in the New York Supreme Court of criminal possession with intent to sell a controlled substance, in violation of New York Penal Law § 220.16(1). Petitioner acknowledges this charge in his Motion, and a Certificate of Disposition and the plea agreement in Petitioner's federal case confirm the same. (D.E. No. 1-1 ¶ 8; D.E. No. 9); *United States v. Mann*, No. 16-0380, D.E. No. 97, Schedule A ¶ 1(b); *United States v. Green*, 480 F.3d 627, 633 (2d Cir. 2007) ("[W]e regard a New York

8

Certificate of Disposition as the type of judicial record that the *Shepard* Court indicated a federal district court may consider in an effort to determine the nature of the New York offense to which a federal defendant has previously pleaded guilty."). The Court thus turns to the issue whether Petitioner's conviction under § 220.16(1) constitutes a controlled substance offense under the career offender guidelines.

Section 4B1.2(b) defines a "controlled substance offense" for purposes of the career offender guideline - Section 4B1.1 - as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). NYPL § 220.16(1) states, in pertinent part, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses a narcotic drug with intent to sell it." A violation of § 220.16 is a class B felony punishable by up to nine years' imprisonment. *See* NYPL §§ 220.16 & 70.70(1)(a), (2)(a)(i) (2008). Section 220.16(1) clearly prohibits the possession of a controlled substance, i.e., "a narcotic drug," with the intent to distribute, i.e., sell it. Thus, Petitioner's New York state law conviction qualifies as a controlled-substance predicate under Section 4B1.2(b) of the guidelines. *See Martinez v. United States*, No. 17-1049, 2020 WL 435364, at *3, 4–5 (W.D.N.Y. Jan. 28, 2020) (finding that violation of Section 220.16(1) constitutes a controlled substance offense under career offender guideline); *United States v. Taylor*, No. 11-0310, 2012 WL 5991886, at *4–5 (S.D.N.Y. Nov. 30, 2012) (same), *aff'd sub nom.*, *United States v. Fitzgerald*, 542 F. App'x 30 (2d Cir. 2013) (nonprecedential).

Petitioner's arguments to the contrary are unpersuasive.  First, Petitioner cites to § 220.16's inclusion of Ritalin as a "narcotic drug," arguing that Ritalin is not scheduled as a narcotic drug federally.  (D.E. No. 1-1 ¶¶ 19–21).  Second and relatedly, Petitioner argues that the NYPL includes at least one substance (hCG) that is not a federally scheduled controlled substance.  But as explained above, because § 220.16 is a divisible statute, the Court focuses on the subsection Petitioner was convicted of—§ 220.16(1)—which deals with "narcotic drugs."  New York law defines a "narcotic drug" as any controlled substance listed in "schedule I(b), I(c), II(b) or II(c)" of New York Public Health Law § 3306.  *See* NYPL § 220.00(7).  Chorionic gonadotropin, also known as hCG, however, appears in schedule III of Section 3306.  *See* New York Public Health Law § 3306.  Methylphenidate, the generic name for Ritalin, appears in schedule II(d) of Section 3306.  *See id.*  In other words, neither Ritalin nor hCG are listed in schedule I(b), I(c), II(b) or II(c) and are therefore irrelevant to the "narcotic drug" subsection Petitioner was convicted under.  And their inclusion elsewhere in the NYPL is irrelevant to the Court's consideration of whether § 220.16(1) is broader than the federal definition of a controlled substance offense.

Third, Petitioner argues that use of the term "sell" in § 220.16(1) renders that provision broader than the federal definition of controlled substance offense, which uses "distribute."  (D.E. No. 1-1 at 7–8).  Under the Sentencing Guidelines, a "controlled substance offense" includes "possession of a controlled substance . . . with intent to manufacture, import, export, distribute or dispense."  U.S.S.G. § 4B1.2(b).  The United States Code indicates that the term "distribute" means "to deliver (other than by administering or dispensing) a controlled substance or a listed chemical."  21 U.S.C. § 802(11).  "Deliver" means "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship."  *Id.* § 802(8).  Under the NYPL, "sell" "means to sell, exchange, give or dispose of to another, or to

offer or agree to do the same." According to Petitioner, because NYPL's definition of "sell" includes mere offers to sell, it criminalizes a greater swath of conduct than the elements of the federal definition of a controlled substance offense. (D.E. No. 1-1 ¶¶ 22–24). The Court disagrees.

The United States Court of Appeals for the First Circuit has considered—and rejected—Petitioner's argument. *United States v. Bryant*, 571 F.3d 147 (1st Cir. 2009). In *Bryant*, the appellant similarly argued that because New York criminalizes offers to sell, it criminalizes conduct that falls outside the federal definition of a controlled substance. *Id.* at 157. The appellant relied on a Second Circuit case—*United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008)—wherein the court considered the criminalization of an offer to sell under Connecticut law. The *Savage* court expressed concern that the Connecticut law could include a fraudulent offer, meaning that the person making the fraudulent offer would not have the intent to distribute or sell, as contemplated by the federal definition of a controlled substance offense. *Id.* at 966–67. As a result, the *Savage* court concluded that the Connecticut statute criminalized more conduct than that which falls within the federal definition. *Id.* at 967. The *Bryant* court, however, distinguished the NYPL from the Connecticut law at issue in *Savage*. *Bryant*, 571 F.3d at 158. Specifically, the *Bryant* court explained that "it is well-established under New York law that 'in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell- i.e., that defendant had both the intent and ability to proceed with the sale.'" *Id.* (first quoting *People v. Samuels*, 780 N.E.2d 513, 515 (N.Y. 2002), then quoting *People v. Mike*, 706 N.E.2d 1189, 1191 (N.Y. 1998)). The *Bryant* court continued that

> the instant case is distinguishable from *Savage* because concerns that Bryant could have been convicted for making a fraudulent offer, a non-predicate offense, do not exist here. At the time Bryant was allegedly convicted of the offense, he would have been found to have *intent* to proceed with a sale. It follows then that the New York conviction qualifies

>as a predicate offense under U.S.S.G. § 4B1.2, which requires an "intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

*Id.*

In *United States v. Santana*, a panel of the United States Court of Appeals for the Third Circuit considered the same issue and stated that the *Bryant* court's interpretation of New York law "makes sense." 677 F. App'x 744, 746 (3d Cir. 2017) (nonprecedential). Thus, the panel held, "an offer to sell a controlled substance, made with the intent to and ability to proceed, may be rationally considered a crime 'related to or connected with . . . distributing' that substance." *Id.* (citing *United States v. Gibbs*, 656 F.3d 180, 186 (3d Cir. 2011)).

The Court finds these decisions persuasive and follows them here. Accordingly, the Court rejects Petitioner's arguments and finds that Petitioner's conviction under NYPL § 220.16(1) was properly considered a controlled substance offense.

### B. Ineffective Assistance of Counsel

Petitioner's second argument is that counsel provided ineffective assistance for not arguing that Petitioner's New York conviction did not qualify as a controlled substance offense. (D.E. No. 1-1 ¶ 25). Petitioner argues that counsel "failed to object to or challenge the [c]areer offender enhancement on the grounds set out in *Mathis v. United States*." (Motion at 6).

The United States Supreme Court has set forth a two-part test by which courts must evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland* a petitioner must demonstrate: (i) "that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and (ii) "that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687.

12

However, "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). Because Petitioner's claim that his New York conviction did not qualify as a controlled substance offense is meritless, Petitioner has failed to demonstrate that his trial counsel was ineffective for failing to object to or challenge the career offender enhancement.

### IV.     CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(2), a petitioner may not appeal from a final order in a proceeding under § 2255 unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As Petitioner's claims are without merit, he has failed to make a substantial showing that he was denied a constitutional right. Because Petitioner has failed to make such a showing, no certificate of appealability shall issue.

### V.     CONCLUSION

For the foregoing reasons, the Court denies the Motion (D.E. No. 1) and declines to issue a certificate of appealability. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*  
**Esther Salas, U.S.D.J.**